UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SPASO GAVRIC, individually
and on behalf of others
similarly situated,

    Plaintiff,

v.                           Case No: 8:20-cv-2978-VMC-AAS

REGAL AUTOMOTIVE GROUP, INC.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant Regal Automotive Group, Inc.'s Motions to Dismiss and Compel Arbitration of Opt-in Plaintiffs Christopher Mitchell (Doc. # 27), Timothy Locke (Doc. # 28), and Edward Perry (Doc. # 29), filed on April 8, 2021. Opt-in Plaintiffs filed an omnibus response in opposition on April 27, 2021. (Doc. # 40). For the reasons that follow, the Motions are granted in part as set forth herein.

## I. Background

Plaintiff Spaso Gavric initiated this action on December 15, 2020, accusing Regal — his former employer — of violations of the Fair Labor Standards Act (FLSA) (Count I), violations of the Florida Minimum Wage Act (FMWA) (Count II), breach of

contract (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), and unpaid wages (Count V). (Doc. # 1). According to the complaint, Regal artificially manipulates its sales numbers and commission figures in order to deprive sales associates, like Gavric, of their wages. (Id. at ¶¶ 5, 15, 45-48).

After Regal answered Gavric's complaint, (Doc. # 12), three individuals consented to join the action (collectively, "Opt-in Plaintiffs"). Locke joined the action on February 24, 2021, (Doc. # 17), Perry on March 2, 2021, (Doc. # 19), and Mitchell on March 16, 2021. (Doc. # 22).

Regal now moves to dismiss the claims of the three Opt-in Plaintiffs and/or compel them to arbitrate pursuant to binding agreements between the parties. (Doc. ## 27, 28, 29). Opt-in Plaintiffs filed an omnibus response in opposition (Doc. # 40), Regal replied (Doc. # 45), and the Motions are ripe for review.

## II. **Legal Standard**

In enacting the Federal Arbitration Act (FAA), Congress set arbitration agreements on equal footing with all other contracts. 9 U.S.C. § 2. Under the FAA, pre-dispute agreements to arbitrate "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract." Id. The FAA reflects a "liberal federal policy favoring arbitration[,]" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011), but courts can only require parties to arbitrate if the parties have agreed to do so. Hanover Ins. Co. v. Atlantis Drywall & Framing LLC, 611 F. App'x 585, 588 (11th Cir. 2015).

District courts consider three factors when ruling on a motion to compel arbitration: (1) whether a written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. Senti v. Sanger Works Factory, Inc., No. 6:06-cv-1903-ACC-DAB, 2007 WL 1174076, at *2 (M.D. Fla. Apr. 18, 2007).

Generally, "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy[,]" are questions a district court must resolve before a court can compel arbitration. Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003). "Challenges to the validity of the contract as a whole are for the arbitrator to decide, whereas challenges . . . to the very existence of the contract must be resolved by the court before deciding a motion to compel arbitration." Americana Commc'ns,

Inc. v. WMS Providers, Inc., No. 2:12-cv-548-JES-DNF, 2015 WL 757820, at *2 (M.D. Fla. Feb. 23, 2015).

When deciding whether an arbitration agreement exists in the first place, the Eleventh Circuit has ruled that "a summary judgment-like standard is appropriate and . . . a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." Bazemore v. Jefferson Capital Sys., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

A dispute is not "'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" Baloco v. Drummond Co., 767 F.3d 1229, 1246 (11th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)). District courts have consistently held that "conclusory allegations without specific supporting facts have no probative value." Leigh v. Warner Bros., 212 F.3d 1210, 1217 (11th Cir. 2000).

If a district court determines an agreement existed, then the court should compel arbitration without assessing the arbitration agreement's validity or scope. Terminix Int'l

Co. v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332-33 (11th Cir. 2005).

## III. **Analysis**

Regal asserts that each Opt-in Plaintiff signed a binding arbitration agreement, therefore the Court should compel arbitration of each Opt-in Plaintiff and/or dismiss their claims. (Doc. ## 27, 28, 29).

Opt-in Plaintiffs do not dispute that the attached arbitration agreements (Doc. ## 27-2, 28-2, 29-2), if valid, would encompass the claims in this case and require the claims be submitted to arbitration. (Doc. # 40 at 2) (conceding that "standing alone," the agreements "would seem to compel arbitration"). Opt-in Plaintiffs' sole argument is that each arbitration agreement was "completely superseded by [an] at-will employment agreement" between Opt-In Plaintiffs and Regal. (Id.). According to Opt-in Plaintiffs,

> Docs 27-2, 28-2 and 29-2, respectively, [express a] clear, unmistakable and definite intent for the at-will agreement to supersede all contemporaneous agreements, and the arbitration agreements clearly are contemporaneous as they were signed the exact same day.

(Id.).

Whether a superseding agreement renders a prior arbitration agreement ineffective goes to the very existence

of an enforceable arbitration agreement. Dasher v. RBC Bank (USA), 745 F.3d 1111, 1122 (11th Cir. 2014). The Court must resolve the gateway issue of the agreement's existence before it can compel a motion for arbitration. See Id. (holding that the "threshold determination of whether a subsequent agreement entirely superseded a prior agreement is made under state law, without applying the FAA's presumption [in favor of arbitrability]"); see also Green Tree Fin. Corp., 539 U.S. at 452. The Court uses a summary judgment-like standard to evaluate the existence of a contract. Bazemore, 827 F.3d 1333. Under this standard, the Court finds that Regal has established the existence of a valid agreement to arbitrate for each of the three Opt-in Plaintiffs.

## A. Timothy Locke and Edward Perry

The Court first examines the arbitration agreements signed by Locke and Perry. Both Locke and Perry signed a two-page form titled "Agreements," which contains two sections. (Doc. ## 28-2, 29-2). First, the "At[-]Will Employment Agreement" section sets out various terms of employment. This section includes a merger clause and ends with a signature block. Below the signature block is a separate section titled "Binding Arbitration Agreement," which contains a second signature block. (Doc. ## 28-2, 29-2).

Opt-in Plaintiffs contend that since the two sections are styled as separate "agreements," and have separate signature blocks, the At-Will Agreement is an entirely separate contract from the Arbitration Agreement, therefore its merger clause supersedes the contemporaneous Arbitration Agreement. (Doc. # 40 at 2).

The Court disagrees. Locke signed both sections on August 14, 2017, (Doc. # 28-2) and Perry signed both sections on May 11, 2015. (Doc. # 29-2). Under Florida contract law, "where multiple agreements are entered into by the same parties, at the same time, concerning the same transaction or subject matter, they are generally construed together as a single contract." Yellow Pages Photos, Inc. v. Ziplocal, LP, 795 F.3d 1255, 1268 (11th Cir. 2015) (internal citations omitted). And where one or more provisions of a contract conflict, "they should be construed so as to be reconciled, if possible." Seabreeze Restaurant, Inc. v. Paumgardhen, 639 So.2d 69, 71 (Fla. 2d DCA 1994) (holding that the trial court erred where it "failed to consider these general contract principles and ignored the fact that all of the documents were executed together, as part of one transaction").

Here, when construed together, it is clear the At-Will Agreement was not meant to supersede the Arbitration

Agreement. Rather, the parties intended to be bound by both provisions and treat the two "agreements" as one cohesive employment contract. As noted by Opt-in Plaintiffs, the agreements "originate on the same piece of paper." (Doc. # 40 at 4). Furthermore, they were signed on the same day, contain the same subject matter (the terms of employment), and were lumped under the joint title "Agreements." Most tellingly, the bottom of the documents bear the joint label: "At[-]Will Arbitration Agreement." (Doc. ## 28-2, 29-2). These characteristics signal an intent to treat the agreements as two sections of one unified contract.

The plain language of the documents confirms that the two agreements were intended to be read together. The At-Will Agreement's merger clause states:

> **This agreement** is the entire agreement between [Regal] and the employee regarding the rights of [Regal] or employee to terminate employment with or without good cause and **this agreement** takes the place of all prior and contemporaneous agreements, representations, and understandings of the employee and [Regal].

(Doc. ## 28-2, 29-2) (emphasis added). The Arbitration Agreement begins immediately after the At-Will Agreement's signature block, and begins with the phrase, "I **also** acknowledge that the company utilizes a system of alternative dispute resolution . . . " (Doc. ## 28-2, 29-2) (emphasis

added). A plain reading of this language shows that the Arbitration Agreement was part of the "agreement" referenced in the merger clause, not a separate contract superseded by the merger clause.

The Court is not persuaded by Opt-in Plaintiffs' comparison to Dasher. In that case, a customer entered into an agreement with a bank in 2008 that contained an arbitration clause. 745 F.3d 1111. Several years later, in 2012, a financial group acquired the bank and issued a new agreement that did not contain an arbitration agreement. The customer accepted the new agreement. The Eleventh Circuit held that no valid arbitration agreement existed because the 2012 agreement with the financial institution "entirely superseded" the 2008 agreement with the bank. Id. at 1123.

Here, unlike in Dasher, the two agreements were signed on the same day, on the same piece of paper, by the same parties. These factors indicate there was not meant to be a separate agreement, but instead one cohesive contract that included both an arbitration provision and an at-will employment provision. See Upofloor Americas, Inc. v. S Squared Sustainable Surfaces, LLC, No. 6:16-cv-179-RBD-DCI, 2016 WL 5933422, at *3 (M.D. Fla. Oct. 12, 2016) (noting that "multiple agreements are generally construed together as a

single contract when they are 'executed by the same parties, at or near the same time and concerning the same transaction or subject matter'" (quoting <u>Yellow Pages Photos, Inc.</u>, 795 F.3d at 1268)).

Accordingly, the Court finds that Opt-in Plaintiffs fail to raise a material dispute that a binding arbitration agreement between Regal and Locke, and Regal and Perry, exists. The Motions are granted as to those Opt-in Plaintiffs to the extent they must submit their claims to arbitration.

### B. **Christopher Mitchell**

The Court next addresses the arbitration agreement between Regal and Mitchell. (Doc. # 27-2). Unlike Locke and Perry, Mitchell signed a two-page form entitled "Arbitration Agreement." (<u>Id.</u>). His agreement contains several paragraphs of arbitration terms, followed by a signature block. (<u>Id.</u> at 1-2). Underneath the signature block (but on the same page) begins a section labeled "At-Will Employment Acknowledgement," which includes several other terms of Mitchell's employment, a merger clause, and a second signature block. (<u>Id.</u>).

Similar to Locke and Perry, Opt-in Plaintiffs argue that because the arbitration provisions end with a signature block, and the At-Will Acknowledgement requires a second

signature, the At-Will Acknowledgement functions as an entirely new contract that supersedes all provisions of the Arbitration Agreement. (Doc. # 40 at 2).

The Court disagrees, for the same reasons it disagrees that Locke and Perry signed a superseding agreement. Furthermore, Opt-in Plaintiffs cite no case law supporting their contention that a signature block within a document automatically signals the end of one contract and the beginning of a new one. (Doc. # 40 at 2). On the contrary, "[i]t is fundamental that in construing a contract, the intention of the parties must be determined from examination of the whole contract and not from the separate phrases or paragraphs." Cali v. Meadowbrook Lakes View Condo. Ass'n B Inc., 59 So. 3d 363, 366 (Fla. 4th DCA 2011).

Here, the document as a whole indicates that the At-Will Acknowledgement is but one provision of a broader "Arbitration Agreement," not a separate contract superseding its terms. The Acknowledgment is on "Page 2 of 2" of a form titled "Arbitration Agreement." (Doc. # 27-2 at 2). The Acknowledgement is contained within the same decorative border as the Arbitration Agreement, rather than set apart from it, and is formatted in the same fashion as the previous arbitration terms. Even the phrase "At-Will Employment

11

Acknowledgement" is written in a smaller font than "Arbitration Agreement," indicating the former is a mere heading and the latter the title of the whole document. (Id.).

The plain language of the document confirms this interpretation. Immediately before the first signature block, the document states: "The parties acknowledge that this Agreement shall not alter the at-will nature of their employment relationship." (Id.). Then, the At-Will Acknowledgement states:

> **This agreement** is the entire agreement between the Company and the Employee regarding the rights of Company or Employee to terminate employment with or without good cause, and **this agreement** takes the place of all prior and contemporaneous agreements, representations, and understandings of the Company and the Employee.

(Id.) (emphasis added). A plain reading this language indicates that the Arbitration Agreement is the "agreement" referenced in the merger clause. The mere addition of a signature block does not negate this clear intent and a plain reading of the agreement. Accordingly, the Court agrees with Regal that it has established a valid agreement to arbitrate with Mitchell. The Motion regarding Mitchell is granted to the extent that Mitchell must submit his claims to arbitration.

IV. **Stay or Dismiss**

Circuit precedent is clear that actions should generally be stayed, not dismissed, pending resolution through arbitration. Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992). Therefore, the action is stayed pending arbitration.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Regal Automotive Group, Inc.'s Motions to Dismiss and Compel Arbitration (Doc. ## 27, 28, 29) are **GRANTED IN PART.**

(2) Opt-in Plaintiffs Christopher Mitchell, Timothy Locke, and Edward Perry are directed to submit their claims to arbitration. The case is **STAYED** as to these Plaintiffs.

(3) The parties are directed to file a joint status report on the arbitration by **July 19, 2021,** and every 60 days thereafter until arbitration has concluded.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of May, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE