**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| **SPASO GAVRIC**, <br><br> Plaintiff, <br><br> v. <br><br> **REGAL AUTOMOTIVE GROUP, INC.**, <br><br> Defendant. | **Case No: 8:20-cv-2978-T-33AAS** <br><br> **Judge: Virginia M. Hernandez-Covington** <br><br> **Mag. Judge: Amanda A. Sansone** |

**JOINT MOTION FOR DISMISSAL WITHOUT PREJUDICE OF FLSA CLAIM**
**(COUNT I) AND INCORPORATED MEMORANDUM OF LAW**

COME NOW, opt-in Plaintiff, Christopher Mitchell ("Plaintiff"), and

Defendant, Regal Automotive Group, Inc. ("Regal Automotive"), (collectively, the

"Parties"), by and through respective undersigned counsel, pursuant to the

Court's paperless Order (Doc. 78), hereby file this Joint Motion for Dismissal

without Prejudice of Count I, which is Plaintiff's minimum wage claim under the

Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"),

and state as follows:

**Introduction & Factual Summary**

On September 22, 2022, the opt-in Plaintiffs and Defendant filed a Final Joint

Status Report and Stipulation for Dismissal (Doc. 77) following a proposed

settlement reached through arbitration. As indicated therein, opt-in Plaintiffs and Defendant resolved all claims except those asserted under the FLSA, for which they sought dismissal without prejudice. On September 23, 2022, the Court issued an Order (Doc. 7 8) requiring the Parties to file a motion for approval of the "FLSA settlement" by September 30, 2022, including the "reasons why the opt-in Plaintiffs have agreed to dismiss the FLSA claim without prejudice, particularly given their settling the non-FLSA claims for compensation at the same time."

As discussed in more detail below, the settlement of this case is unique because the facts and law related to the FLSA claim are complicated, but the facts and law related to the common law unpaid commission claims are comparatively straightforward. The Plaintiff's claims are essentially twofold. First, the Plaintiff claimed that the Defendant's pay practices violated both FLSA and Florida Minimum Wage Act (FMWA) by depriving him of the prevailing minimum wage. Second, the Plaintiff advanced three additional theories, each centered upon the Defendant allegedly failing to pay him proper commissions as a car salesman.

While Plaintiff's FLSA claim is cognizable, its likelihood of ultimate success is in doubt. The reason is that car salesmen are not paid in a typical manner. They receive a draw on commission, and here, the commission was paid monthly. However, Plaintiff's draw on commission was in the amount of minimum wage, and he was then paid his commissions at the end of the month. According to the

Plaintiff, the problem is that he worked in excess of the number of minimum wage hours he was paid for. While overtime is exempt under the FLSA's motor carrier exemption, any extra hours worked would have dropped his bi-weekly average wage below minimum wage. Several factors make this FLSA claim difficult.

First, proving the exact number of hours worked by the Plaintiff would be exceedingly difficult since no records exist other than those that would establish a 40-hour work week. While *Mt. Clemens* allows a plaintiff to recreate their hours worked, that only comes into play once the employer's records are shown to be inaccurate or unreliable. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). To do that here, the Plaintiff would need extensive electronic discovery such as badge swipe records, telephone records, email records, software log-in records, and computer log-in records. Digesting and synthesizing all of that data would require an expert, and an expensive expert at that, due to the time-consuming nature of trying to recreate an employee's daily activities to establish time worked. The cost of an expert would be far in excess of any possible minimum wage recovery, and the Plaintiff would be undertaking a large financial risk should his case not ultimately prove successful.

Second, even if the Plaintiff were to establish that the Defendant's time records were inaccurate and that his average hourly wage thus dipped below the prevailing minimum wage, it remains very much in doubt whether the law would

afford him any relief. The reason is that it is unclear whether the controlling pay and settlement periods are by the week, biweekly or monthly, which are relevant to determine whether or not the Plaintiff's is entitled to unpaid minimum wage back pay. Essentially, the Defendant would argue that it is proper to allocate the oftentimes larger end-of-the-month check over the entire month for minimum wage purposes. Nothing in the law says a pay period has to be one week only or that employees must be paid weekly. A pay period can be one week, two weeks, or a month. Thus, a salesman earning no commission and no compensation for the first three weeks of a month but earning substantial commissions and compensation at the end of the month may not be entitled to minimum wage payments for the first three weeks when no money was received. To determine what a pay period consists of, one must look at the "actual pattern of payments adopted by the parties." *Luther v. Wilson*, 528 F. Supp. 1166, 1173-74 (S.D. Ohio 1981).

The Defendant's position regarding commissions being applied to prior weeks to satisfy its minimum wage obligations has support in *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, *modified on other grounds*, 776 F.2d 265 (11th Cir. 1985). In that case, the district court, relying on the Field Operations Handbook issued by the Department of Labor's Wage and Hour Division, held that in a car salesmen context, "excess commissions could be carried forward and applied to

the minimum wage [deficiency] on the next settlement date." *Id.* at 1578 (emphasis

omitted). The Eleventh Circuit noted the Handbook states, "'[t]he only

requirement is that the employee receive 'prompt payment' of the minimum wage

covering all hours worked during the pay period.'" *Olson* at 1578.

Accordingly, and with the benefit of initial discovery, the Parties reached a

settlement as to Counts II-V, which was memorialized in the Settlement

Agreement, a true and correct copy of which is attached as Exhibit "A" hereto.  A

copy of the Parties' Joint Motion to Approve Settlement Agreement within

arbitration, along with the arbitrator's corresponding Order, are attached hereto

as Exhibits "B" and "C," respectively.

As indicated therein, the Parties did <u>not</u> reach a settlement as to Count I,

and they seek dismissal as to this Count only <u>without</u> prejudice. In doing so, the

Defendant specifically acknowledged that there is no settlement of the FLSA claim

at all, meaning it recognized it could be re-sued under the FLSA and the Settlement

Agreement would be no bar to such a claim.

Because the Parties are not settling the FLSA claim, they perhaps mistakenly

believed that judicial approval of the settlement of the non-FLSA claims was not

required. The Parties now recognize their misinterpretation of the Court's

position; as communicated in the Order, this Court has previously held that even

a joint stipulation for dismissal without prejudice may require judicial review of

the circumstances surrounding the dismissal of an FLSA claim. *Seliem v. Islamic Soc'y of Tampa Bay Area, Inc.*, 2018 WL 4925687, at *2 (M.D. Fla. Oct. 2, 2018).

Accordingly, the Parties wish to be an open book and allow the Court to review whatever it deems necessary. They thus respectfully submit the Settlement Agreement for judicial review and request the Court dismiss Count I *without* prejudice for the reasons stated herein.

<u>**Memorandum of Law**</u>

**1. Applicable Law.**

In *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." 679 F.2d at 1353. A court may only enter an order approving a settlement if it finds that the settlement "is a fair and reasonable resolution of a bona fide dispute," of the plaintiff's FLSA claims. *Id.*, at 1353-55. In doing so, the Court should consider the following nonexclusive factors:

- The existence of collusion behind the settlement.

- The complexity, expense, and likely duration of the litigation.

- The state of the proceedings and the amount of discovery completed.

- The probability of plaintiff's success on the merits.

- The range of possible recovery.

- The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute. *See Lynn's Food*, 679 F.2d at 1354. There is a strong presumption in favor of settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "If judicial scrutiny confirms that the parties' settlement involves no compromise [of the employee's claim], the district court should approve the settlement and dismiss the case… If the parties' proposed resolution requires the employee to compromise an FLSA right, the district court must scrutinize the compromise for 'fairness.'" *Dees v. Hydradry*, 706 F. Supp. 2d 1227, 1247 (M.D. Fla. 2010).

2. **The Factors Weigh In Favor of Approving the Settlement and Dismissing the FLSA Claim Without Prejudice.**

   a. **The Plaintiff Did Not Compromise His FLSA Claim.**

   While a district court in the Eleventh Circuit must review the settlement of an FLSA claim, the Plaintiff has not settled or otherwise compromised his FLSA claim. As the Settlement Agreement shows, his FLSA claims are explicitly carved out and are not being released. Moreover, the Parties seek dismissal of the FLSA claim <u>without</u> prejudice. This means that the Plaintiff retains all rights under the FLSA, and the Defendant has acknowledged that it understands it can be re-sued.

(Doc. 70, fn. 3). This case is much different from those cases where the FLSA claim is actually being settled, but the parties are trying to use a dismissal without prejudice to prevent a district court's review of a settlement agreement that actually releases FLSA claim. *Compare Seliem v. Islamic Soc'y of Tampa Bay Area, Inc.*, No. 8:18-cv-1590-T-33AEP, 2018 U.S. Dist. LEXIS 170054, at *3 (M.D. Fla. Oct. 2, 2018).

Accordingly, the Parties respectfully submit that because the Plaintiff is <u>not</u> settling or compromising his FLSA claim, a *Lynn's Food* analysis is not required.

### b. Dismissal Would Still Be Warranted Even Under a *Lynn's Food* Analysis.

As described above, the FLSA claim here is tough to prove on the merits. After having engaged in preliminary discovery, it is now evident that this will be a fact-intensive undertaking requiring large amounts of electronic discovery and the utilization of experts to synthesize the data received. And even if that hurdle were jumped, the Plaintiff must still face another significant hurdle, which is an Eleventh Circuit case seemingly allowing monthly commissions to be apportioned over the preceding weeks to satisfy the employer's minimum wage obligations. Where claims are uncertain, such as here, *Lynn's Food* instructs that "the district court [is allowed] to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354.

The factual and legal issues represent two large hurdles to surmount for the Plaintiff to recover minimum wages, which are not a relatively significant sum. For example, while Plaintiff's FLSA Interrogatory Response indicates an imprecise number of hours, he states he worked his weekly-scheduled day off, which would be 8-hours. Taking 8-hours per week x $7.25 (federal minimum wage) x 52 weeks x 2-years = $6,032.00. This would be assuming the Plaintiff worked *every* day off during each of the 52-weeks in a year, which is unlikely. But even if proven true, this may not matter should the Court hold that the Defendant could apportion the monthly commissions over the preceding month to satisfy its minimum wage obligations.

Accordingly, it is tough to justify the continued pursuit of the FLSA claim compared to the risk and costs of proving it. An expert alone would be tens of thousands of dollars, and the Plaintiff would have to shoulder that expense and risk should the Court decline to grant the requested dismissal without prejudice because he would have to continue to pursue his FLSA claim here or risk losing and being hit with defense costs (which could include its own expert) should he be unsuccessful. To borrow a rather Floridian expression: the juice is no longer worth the squeeze. And both of the Parties' respective counsel agree in this regard, and regarding the complexity, difficulty, and novelty of the issues presented as to

the FLSA claim and its risks.[1] Where, as here, "the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009).

That said, the Plaintiff did not actually settle his FLSA claim as Plaintiff's counsel negotiated a settlement whereby the Plaintiff is not releasing any FLSA rights. Nothing in the Settlement Agreement would later preclude the Plaintiff from pursuing his FLSA claim. He retains the right to sue the Defendant later, and the Defendant has specifically acknowledged the Plaintiff has that right and that it is aware of the possibility of a later suit.

As stated earlier, the Parties are not trying to circumvent the Court's review of an FLSA settlement through the use of procedural tools – the FLSA claim is not being released, which the Parties recognize is outside the norm. Nevertheless, because there is no compromise of the Plaintiff's FLSA claim, and because even if it was compromise it would otherwise pass a *Lynn's Food* fairness review, the Parties respectfully submit that Counts II-V ought to be dismissed with prejudice and that Court I be dismissed <u>without</u> prejudice.

---

[1] Plaintiff's counsel, Benjamin H. Yormak, is a Board Certified Expert in labor and employment law who represents only employees. Defendant's counsel, J. Scott Hudson, was admitted in 2004 and practices nearly exclusively labor and employment law, representing management.

WHEREFORE the Parties jointly request the Court grant dismissal without prejudice as to Count I, and aware all relief deemed just and equitable.

Respectfully submitted,

Dated: September 28, 2022

s/ Benjamin H. Yormak
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff(s)
Yormak Employment & Disability Law
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

D. Michael Campbell, Esq.
Daniel D. Moody, Esq.
Moody Law
575 North Broadway
Bartow, Florida 33830
Telephone: (863) 733-9090
Facsimile: (863) 534-1001
Primary E-mail:
dmcampbell@campbelllaw.com
Secondary Email: sam@moodylaw.com

s/ J. Scott Hudson
J. Scott Hudson, Esquire
Florida Bar No.: 0725137
shudson@zkslawfirm.com
kgoodman@zkslawfirm.com
service@zkslawfirm.com
Zimmerman, Kiser & Sutcliffe, P.A.
315 E. Robinson St., Ste. 600
Orlando, Florida 32801
Telephone: (407) 425-7010
Facsimile: (407) 425-2747
Trial counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2022, I filed the foregoing document

with the Court using the CM/ECF System, which caused delivery by Electronic

Mail to all counsel of record.

s/ J. Scott Hudson
J. Scott Hudson, Esquire